**FILED**
Lucinda B. Rauback, Acting Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By arowe at 8:53 am, Nov 08, 2012*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | |
|---|---|
| IN RE: ) | CHAPTER 7 CASE |
| ) | NUMBER 12-20588 |
| ROBERT WILLIAM KNOX JR. ) | |
| ) | |
| HOLLY SPALDING ) | |
| ) | |
| Creditor/Movant ) | |
| ) | |
| vs. ) | |
| ) | |
| ROBERT WILLIAM KNOX JR. ) | |
| ) | |
| Debtor/Respondent ) | |

## OPINION AND ORDER DENYING MOTION FOR RELIEF FROM STAY AND EXTENSION OF BAR DATE

This matter is before me on the Motion for Relief from Stay and Extension of Bar Date ("Motion") by Holly Spalding, former domestic partner of Debtor Robert William Knox Jr. Spalding seeks relief from the automatic stay to enforce the Order on Plaintiff's Motion for Contempt and for Sanctions ("Contempt Order") entered postpetition in her trover action against Knox in state court. The Contempt Order is currently stayed by order of the issuing court. In addition, Spalding seeks

extension of the claims bar date to file a proof of claim on account of any judgment or award in the state court action.

The Motion was heard and taken under advisement. Pursuant to the findings of fact and conclusions of law that follow, the request for stay relief is denied, because there is no valid order to enforce, the Contempt Order being void as a violation of the automatic stay. The request for extension of the claims bar date is denied as premature, because no claims bar date has been set in this no-asset chapter 7 case.

## FINDINGS OF FACT

Knox and Spalding were romantically involved and living together in early 2010. The relationship soured, and in the spring of 2010, Spalding moved out of the apartment they had shared, leaving behind some of her personal possessions.

Knox did not return Spalding's belongings. Accordingly, on December 9, 2010, Spalding filed a civil action against Knox in the Superior Court of Chatham County—a lawsuit that Knox largely ignored and that he referred to as a "kangaroo action" (Hr'g Test. Aug. 16, 2012).

Upon Spalding's application, the Superior Court issued an Ex Parte Order and Rule Nisi enjoining Knox "from destroying,

AO 72A

(Rev. 8/82)

damaging, selling, encumbering, contracting to sell, or otherwise disposing of or removing from the jurisdiction of the Court, any property belonging to [Spalding]." (Movant's Ex. 1.) A subsequent show cause hearing, at which Knox appeared, resulted in entry on January 7, 2011, of a temporary restraining order with substantially the same provisions. (Movant's Ex. 2.)

On June 22, 2011, the Superior Court entered a Default Judgment against Knox as to liability. (Movant's Ex. 3.) Then on December 5, 2011, a Final Order was entered (Movant's Ex. 4) after a hearing at which Knox did not appear. Before the scheduled hearing, Knox said he didn't plan to be at the hearing and threatened to file bankruptcy to dodge any judgment that might be entered against him. (Hr'g Test. Aug. 16, 2012.)

Under the terms of the Final Order, Knox was directed to turn over the items of Spalding's personal property listed in an exhibit to the Final Order and to pay $7,000 in costs and attorney's fees. On January 8, 2012, Knox filed a pro se motion for reconsideration of the Final Order (Movant's Ex. 9). The motion was denied, the Superior Court finding that Knox's allegations in support—that he was out of the country on the hearing date—were without merit. (Movant's Ex. 5.)

Meanwhile, after futile attempts at post-judgment discovery, Spalding had filed a motion to compel. The court granted Spalding's motion to compel on the same day it denied Knox's motion for reconsideration of the Final Order—April 3, 2012. (Movant's Ex. 6.)

Knox did not respond to the order granting the motion to compel. On May 2, 2012, Spalding filed a motion for contempt and for sanctions ("Motion for Contempt"), which was set for hearing on Tuesday, May 29, 2012. On the preceding Thursday, Knox filed this bankruptcy case.

Neither Spalding, her attorney, nor the Superior Court knew about the bankruptcy filing. Consequently, the hearing went forward as scheduled. Knox did not appear, and the Contempt Order was entered later that same day.

The Superior Court held Knox in contempt of both the Final Order and the order granting Spalding's motion to compel. (Movant's Ex. 7.) Citing "Defendant's complete disregard for [the] Court's orders," id. at 2, the Superior Court ordered Knox's incarceration and imposed a $500.00 fine. The contempt could be purged by Knox's payment to Spalding of $7859.50. In addition, the court awarded Spalding $359.50 in attorney's fees and expenses incurred in bringing the Motion for Contempt. The

AO 72A

(Rev. 8/82)

court did not, however, provide for the purging of contempt by Knox's returning Spalding's belongings or responding to Spalding's post-judgment discovery requests. On August 7, 2012, the Contempt Order was stayed after the Superior Court was notified of the bankruptcy case.

## CONCLUSIONS OF LAW

Spalding argues that the automatic stay under 11 U.S.C. § 362(a) does not preclude enforcement of the Contempt Order. Spalding is incorrect; the automatic stay applies.

The filing of a bankruptcy petition operates as a stay of most acts against the debtor, including other judicial proceedings that were commenced prepetition. 11 U.S.C. § 362(a)(1). Certain proceedings are excepted from the automatic stay under § 362(b), but a proceeding for civil contempt is not among them. Accordingly, some courts have held that civil contempt proceedings are never excepted from the automatic stay. See e.g., In re Wiley, 315 B.R. 682, 684 (Bankr. E.D. La. 2004); see also In re Lincoln, 264 B.R. 370, 373 (Bankr. E.D. Pa. 2001) (citing district precedent that civil contempt proceedings are stayed).

AO 72A

(Rev. 8/82)

The majority of courts, however, recognize an exception for civil contempt proceedings when the purpose of the proceeding is to uphold the dignity of the court, not to effectuate collection of a judgment. See Kukui Gardens Corp. v. Holco Capital Grp., Inc., 675 F. Supp. 2d 1016, 1027 (D. Haw. 2009); Am. Online, Inc. v. CN Prods., Inc., 272 B.R. 879, 881-82 (E.D. Va. 2002); SEC v. Bilzerian, 131 F. Supp. 2d 10, 14 (D.D.C. 2001); NLRB v. Sawulski, 158 B.R. 971, 975 (E.D. Mich. 1993); Stovall v. Stovall, 126 B.R. 814, 815 (N.D. Ga. 1990); US Sprint Commc'ns Co. v. Buscher, 89 B.R. 154, 157 (D. Kan. 1988); Lowery v. McIlroy & Millian (In re Lowery), 292 B.R. 645, 649 (Bankr. E.D. Mo. 2003) (citing cases); Lori v. Lori (In re Lori), 241 B.R. 353, 355 (Bankr. M.D. Pa. 1999). To determine whether the order is intended to coerce obedience or to effectuate collection of a judgment, courts examine the totality of the circumstances. Forsberg v. Pefanis, No. 1:07-cv-03116, 2010 WL 2331465, at *1 (N.D. Ga. 2010); Kukui Gardens, 675 F. Supp. 2d at 1027 (citing In re Lowery, 292 B.R. at 650); In re Lori, 241 B.R. at 355.

Here, examination of the totality of the circumstances begins and ends with the Contempt Order itself. Its provisions show that the Contempt Order was entered to effectuate collection of the judgment rendered in the Final Order. The Contempt Order

provides that Knox may purge the contempt "by payment of **all sums due** in the amount of $7859.50." (Movant's Ex. 7 at 2 (emphasis added)). Given that $7859.50 is the sum of the attorney's fee award in the Final Order ($7000.00), the fine for the contempt ($500.00), and the attorney's fees for the Motion for Contempt ($359.50), the phrase "all sums due" could only mean the total amount Knox owes to Spalding, including the judgment amount, as a result of this lawsuit.

What the Contempt Order does not provide is equally telling: The court did not order Knox to perform the acts required under the Final Order and the order granting Spalding's motion to compel discovery, namely returning Spalding's belongings and responding to her post-judgment discovery requests. The provisions of the Contempt Order are purely pecuniary and thus intended to effectuate collection of the money judgment.

Enforcement of a prepetition judgment against the debtor is an action to which the automatic stay applies. 11 U.S.C. § 362(a)(2). Accordingly, the stay applies to the contempt proceeding here and to the Contempt Order itself, which as a violation of the stay is "void and without effect," Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).

AO 72A

(Rev. 8/82)

In concluding that the automatic stay applies, I have considered the Contempt Order's recitation of Knox's "complete disregard" for the court's orders. Although this language implies that the Contempt Order was intended at least in part to uphold the dignity of the court, it does not change the fact that the Contempt Order is in effect a collection device. See Goodman v. Albany Realty Co. (In re Goodman), 277 B.R. 839, 842 (Bankr. M.D. Ga. 2001) (arrest warrant used as "a collection device" was subject to automatic stay even if based on Debtor's disrespect for superior court).

I have also considered that the Contempt Order as a collection device conflicts with Georgia law. First, contempt may not be used to force payment of a money judgment, as has occurred here. See Hamilton Capital Grp., Inc. v. Equifax Credit Info. Servs., 596 S.E.2d 656, 659 (Ga. Ct. App. 2004) (citing O.C.G.A. § 23-4-37: "If a decree is partly for money and partly for the performance of a duty, the former may be enforced by execution and the latter by attachment [against the person for contempt] or other process.").[1] Second, contempt may not be used to force payment of attorney's fees in the contempt proceeding itself, as

---

[1] This rule does not apply to judgments of alimony and child support, which by statute may be enforced through contempt sanctions. See O.C.G.A. § 19-6-4 (permanent alimony); O.C.G.A. § 19-6-16 (child support).

AO 72A

(Rev. 8/82)

also has occurred here. See Thedieck v. Thedieck, 470 S.E.2d 265, 267 (Ga. Ct. App. 1996) ("A trial court is not authorized to enter an order which simultaneously awards attorney fees in a contempt proceeding and directs that the contemnor be incarcerated unless she pays the award."). But the bankruptcy court is not the proper avenue of appeal from a state court judgment. Accordingly, the question before me is what the Contempt Order provides, not what the Contempt Order should have provided.

Notwithstanding my ruling today, Spalding is not without remedy related to the state court judgment. Her adversary proceeding seeking to except this debt from discharge under § 523(a)(6) is currently pending in this Court. See Spalding v. Knox, No. 12-02027 (Bankr. S.D. Ga. filed Aug. 17, 2012).

Further, the dignity of the Superior Court may yet be upheld, despite the fact that the Contempt Order is void. Because a proceeding for civil contempt for the purpose of upholding the dignity of the court is excepted from the automatic stay, Spalding may with impunity return to the Superior Court and file a new motion for contempt seeking to coerce only Knox's obedience to the order granting Spalding's motion to compel post-judgment

discovery—relief that the Superior Court could properly have granted in the Contempt Order, but did not.

## ORDER

The Motion for Relief from Stay and Extension of Bar Date is therefore **ORDERED DENIED**, but without prejudice to Spalding's right to renew her request to extend the claims bar date if at a later time a claims bar date is set.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this ___ day of November, 2012.